IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

THERON J. BARTELL,             ) Civil Action No. 3:04-22648-CMC-JRM

                              )

               Plaintiff,           )

                              )

               v.                  )

                              )

COMMISSIONER OF SOCIAL SECURITY,   )   **REPORT AND RECOMMENDATION**

                              )

               Defendant.       )

_____ )

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning

the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42

U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security

("Commissioner") denying his claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On September 27, 1999, Plaintiff applied for DIB. Plaintiff's application was denied

initially and on reconsideration in February 2002. On August 29, 2002, the Appeals Council

granted Plaintiff's request for review, vacated the decision of the administrative law judge ("ALJ"),

and remanded the case for further administrative proceedings. A supplemental hearing was held

before an ALJ on April 7, 2003. The ALJ issued a new decision dated August 25, 2003, denying

benefits. The ALJ, after hearing the testimony of a vocational expert ("VE"), concluded that work

exists in the national economy which Plaintiff can perform.

Plaintiff was thirty-years old at the time he alleged he became disabled and thirty-seven

years old at the time his disability insured status expired. He has a high school education and past

relevant work as a truck driver, bale press operator, custodian, and custodian supervisor. Plaintiff

alleges disability since September 3, 1993, due to post-traumatic stress disorder ("PTSD");

depression; and pain in his shoulders, back, knees, and right ankle.[1]

     The ALJ found (Tr. 27-29).

1.    The claimant met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through March 31, 2000.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    Through March 31, 2000, the clamant had an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(b).

4.    Through March 31, 2000, these medically determinable impairments did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments (20 CFR § 404.1527).

7.    Through March 31, 2000, the claimant retained the functional capacity for simple, routine work in a supervised, low stress environment (defined as requiring few decisions) at the light exertional level, except for work requiring interaction with the public or team type interactions with co-workers; crawling, climbing, or balancing; more than limited stooping, twisting, crouching, or kneeling; overhead reaching with either arm; or operation of foot pedals or other controls with either lower extremity; and his work must permit him to alternate between sitting and standing positions

_____

[1] Plaintiff previously filed two applications for DIB. The claims were denied by an ALJ on February 10, 1995, and October 29, 1997, respectively. After the Appeals Counsel denied Plaintiff's request for review in each case, Plaintiff did not pursue further action. In adjudicating Plaintiff's current application for benefits, the ALJ did not reopen these previous applications for benefits, and Plaintiff has not challenged his decision not do so. The ALJ did, however, consider Plaintiff's November 17, 1995 applications for benefits in rendering this decision. Tr. 14-15.

at his discretion. In general terms, his mental impairments impose moderate restrictions in his activities of daily living; social functioning; and concentration, persistence, or pace; and he has had one episode of decompensation of an extended duration (the October to November 1996 VA hospitalization). His mental impairments did not meet the severity requirements of the C criteria of sections 12.04 and 12.06 of the Listing of Impairments.

8.     Through March 31, 2000, the claimant was unable to perform any of his past relevant work (2O CFR § 404.1565).

9.     The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

10.    The claimant has a "high school education" (20 CFR § 404.1564).

11.    The claimant has no transferable skills from semi-skilled work previously performed as described in the body of the decision (20 CFR § 404.1568).

12.    Through March 31, 2000, the claimant had the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13.    Although, through March 31, 2000, the claimant's exertional limitations did not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making there were a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a packager (3,400 jobs in South Carolina and 680,000 jobs in the United States), router (2,700 and 239,000 jobs), and sorter (197 and 55,000 jobs).

14.    The claimant was not under a "disability," as defined in the Social Security Act, at any time through March 31, 2000, the date his disability insurance coverage expired (20 CFR § 404.1520(f)).

On August 17, 2004, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner.  Plaintiff filed this action pro se on October 19, 2004.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.  Richardson

3

v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972).  Under

42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the

Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months…."  See 20 C.F.R. § 404.1505(a)

and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ's decision is not supported by substantial evidence; (2) the

ALJ erred in discounting opinions of disability from one of his treating physicians and a treating

psychologist, (3) the ALJ ignored disability ratings by the Veterans Administration ("VA") and two

of his physicians; (4) the ALJ improperly evaluated Plaintiff's credibility and the effects of his

medications on his ability to work;  (5) the VE was not qualified and failed to review Plaintiff's

file; and (6) the ALJ erred in not accepting the VE's opinion in response to questioning from

Plaintiff's representative at the April 7, 2003 hearing.[2]

---

[2]Plaintiff filed a motion to compel on April 5, 2005, which has been addressed in a separate
order.  To the extent that his motion is construed as a motion to remand, it is recommended that
the motion be denied.  Plaintiff appears to claim that the transcript of one of the hearings as to the
present claim is not part of the record.  Review of the record, however, reveals that the transcripts
of both hearings are included in administrative transcript ("Transcript " or "Tr") filed with the
Court .  Tr. 37-67 (April 7, 2003 hearing); 68-96 (October 17, 2001 hearing).  Plaintiff also
requests a copy of the prior ALJ's decision dated February 19, 2002.  The Transcript in this action
contains a note that this exhibit is not available for inclusion.  Tr. 2.  The Appeals Council, on
August 29, 2002, vacated the ALJ's February 19, 2002 decision and remanded the case to an ALJ
for resolution of a number of issues.  Thereafter, another hearing before an ALJ was held, and a
new decision was issued.  Thus, review of this action is of the second ALJ's decision, not the
decision Plaintiff is attempting to obtain.  There is no indication that  this missing portion of the
(continued…)

4

A.     <u>Substantial Evidence</u>

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because the ALJ picked and chose what evidence to accept. The Commissioner contends that the ALJ's decision is supported by substantial evidence.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

<u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984); <u>Laws v. Celebreeze</u>, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. <u>Cornett v. Califano</u>, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's decision is supported by substantial evidence including the medical notes of Plaintiff's treating and examining physicians, objective medical testing, and the findings of the State agency physicians and psychologists. The decision is also supported by non-medical evidence.

Plaintiff injured his back at work in 1985, was diagnosed with chronic lumbosacral sprain, and given an physical impairment rating of fifteen percent. Tr. 179. He also had residual left

---

[2](…continued)
Transcript would bolster Plaintiff's arguments or prevent judicial review. <u>See</u> <u>Andres v. Bowen</u>, 870 F.2d 453, 455-56 (8th Cir.1989)(absence of portion of hearing transcript did not prevent fair judicial review); <u>Marshall v. Schweiker</u>, 688 F.2d 55, 56 (8th Cir.1982)(ALJ's decision affirmed even though several pages of medical record were illegible, as there was more than enough evidence to support the decision and no indication that the illegible records would aid the appellant). Additionally, there is no indication that Plaintiff did not previously receive a copy of the ALJ's February 19, 2002 decision. Plaintiff appears to have received a copy of the decision, as Plaintiff filed a request for review of that hearing decision on April 11, 2002. Tr. 111. As noted above, the Appeals Council reviewed and vacated the ALJ's February 19, 2002 decision.
.

ankle pain secondary to a twisting injury in 1990, as well as gynecomastia[3] diagnosed in January 1991. Tr. 518, 519. Plaintiff returned to employment, performing medium work, after treatment for these conditions (Tr. 145). See Dixon v. Sullivan, 905 F.2d 237, 238 (8th Cir. 1990)(claimant who worked with impairments over a period of years without any worsening of condition was not entitled to disability benefits); Cauthen v. Finch, 426 F.2d 891, 892 (4th Cir. 1972)(finding claimant was not disabled where she had eye problems of long standing, worked regularly for years despite the problem, and had no significant deterioration).

Plaintiff injured his shoulder at work in January 1993 and was temporarily restricted to a range of sedentary work while he was undergoing treatment, which included surgery. Tr. 184-188, 193. On September 16, 1993, Dr. Michael W. Mendes, an orthopaedic surgeon, examined Plaintiff and noted that Plaintiff's complaints were "nonspecific at best." There was no focal area of tenderness in Plaintiff's cervical spine, trapezius, or shoulders; impingement test was negative bilaterally; and there was no scapular winging or palpable mass. Tr. 191. Dr. Mendes noted that Plaintiff had "unusually well defined and good muscle bulk in both arms, negative straight leg raising tests, normal deep tendon reflexes, and no paravertebral masses." Tr. 190. Dr. Mendes noted that Plaintiff's previous MRI's were essentially normal and he could find no evidence of objective abnormality. Tr. 190-191.

Plaintiff's various physical problems were treated at the VA Medical Center in Columbia, South Carolina. See Tr. 257-521. Physician examinations at the VA clinic consistently revealed that Plaintiff had full range of motion of his extremities, full strength, normal sensation, negative

---

[3]Gynecomastia is the excessive growth of the male mammary glands. Dorland's Illustrated Medical Dictionary 805 (30th ed. 2003).

straight leg raising, and normal reflexes, as well as minimal findings on x-rays. Tr. 277, 305, 337, 355, 362, 364, 391. The lack of objective findings by these treating physicians supports the ALJ's determination that Plaintiff could perform a range of unskilled, light work despite his impairments. See Craig v. Chater, 76 F.3d 585 (4th Cir. 1996).

In December 1996, Plaintiff was scheduled for kinesiotherapy and substance addiction therapy, but his attendance was poor, and he was discharged. Tr. 465. An MRI of Plaintiff's knees in December 1996, showed a small amount of fluid in his right suprapatellar bursa, as well as a small amount of effusion and spurring of the right patella, but no significant meniscal or ligamental abnormalities. Tr. 424-425. Left knee findings revealed a possible meniscus tear. Tr. 422-423.

In March 1997, Plaintiff had negative straight leg raising testing and normal reflexes. Tr. 391. VA Medical Clinic notes on November 10, 1997 reveal that Plaintiff had a full range of motion of his knees, ankles, and arms. Tr. 366. X-rays in January 1998 showed minimal degenerative changes of Plaintiff's shoulders and knees. Tr. 362, 364. An MRI performed in April 1998 revealed findings consistent with Plaintiff's known microadenoma.[4] Tr. 360. On April 15, 1998, it was indicated that Plaintiff had mild crepitus in his shoulder and knees, a good range of motion in his extremities, full strength, normal sensation, and no joint swelling. Tr. 337. Physical therapy notes dated May 6, 1998 noted that Plaintiff had been non-compliant with conservative treatment. Tr. 358.

---

[4]A microadenoma is generally a pituitary adenoma less than 10 mm in diameter and not visible by usual radiographic techniques. Dorlands at 1150. A pituitary adenoma is "a benign neoplasm of the anterior pituitary gland; some contain hormone-secreting cells." Id. at 29.

An MRI of Plaintiff's right knee on June 24, 1998, showed a small amount of free fluid within the suprapatellar bursa and a possible small subchondral cyst. No definite meniscal abnormality could be seen. Tr. 355. An x-ray of Plaintiff's knee on January 21, 2000, showed no significant degenerative change, malalignment, or joint space narrowing. Tr. 305. Plaintiff reported good relief of his knee pain with Tylenol on May 23, 2000. He also reported that he had some occasional lower back and shoulder pain, but no parathesias or weakness. Plaintiff had normal reflexes, full strength, full range of motion of his extremities, intact sensation, and negative straight leg raising tests. Tr. 277.

The ALJ's determination that Plaintiff could perform a range of unskilled work despite his mental impairments is also supported by substantial evidence. Although Plaintiff asserts that he suffered from disabling PTSD secondary to his service in Desert Storm, in 1991 (Tr. 35), he continued working until after his shoulder injury in 1993 and did not receive any significant psychiatric treatment until 1996. Lack of treatment supported the ALJ's conclusions concerning Plaintiff's mental impairments. See Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).

Plaintiff did not receive any significant psychiatric treatment until he was hospitalized in November 1996 at the Dorn VA Hospital in Columbia, South Carolina. Tr. 217-220. It was noted that Plaintiff had a history of auditory and visual hallucinations with binge drinking. Tr. 217. On admission, Plaintiff's physical examination was within normal limits as to gait, reflexes, sensation, and strength. He was alert and oriented, his recent and remote memory was fair, his concentration was good, his thought processes were normal, his mood was calm, and his mood was euthymic. Plaintiff's insight was poor, and his thought content indicated he complained of auditory and visual hallucinations. Tr. 218. Plaintiff underwent testing that was deemed invalid based on Plaintiff's

8

exaggeration of his symptoms.   An endocrine consultation indicated probable bromocriptine induced psychosis, and it was recommended that Plaintiff discontinue that medication.  Tr. 218-219.  Plaintiff was discharged from the hospital in good condition and without further symptoms. Tr. 219.

In January 1997, Plaintiff began treatment in the Mental Health Clinic at the Dorn VA Hospital.  Tr. 309, 314, 316, 323, 333, 349, 368, 379-380, 387, 401.  Mental Health Clinic notes indicate that Plaintiff's symptoms improved when he took his medications, and he had a relapse at a time he decided to take his medications only periodically.   Tr. 333, 349, 368, 380.  "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).  Plaintiff was treated by Dr. Colin Doyle, a psychologist, beginning in February 1997.  See Tr. 279, 316, 324-326, 335, 351, 372, 379, 384, 399-400.

Examinations by consulting physicians provide substantial evidence to support the ALJ's decision.  In October 1999, Al B. Harley, Jr., M.D., Ph.D., examined Plaintiff and found that Plaintiff's intelligence level appeared normal, his remote and recent memory were fair, and he was able to perform serial seven subtractions without significant difficulty.  Plaintiff could recall three of three items after ten minutes and his judgment seemed adequate.  Plaintiff's GAF score indicated moderate symptoms or moderate difficulty in social, occupation, or school functioning.  Dr. Harley wrote :

> I really had a hard time feeling that this fellow exhibited a lot of PTSD…He was somewhat tense, somewhat moody.  I felt that much of the answers he gave to my questions were things that he heard from other people.  I did not feel much genuineness to his suffering.

Tr. 249.  Dr. Harley opined that Plaintiff was mildly restricted in his ability to relate to others, mildly restricted in his daily activity, and mildly constricted in his thought processes.  Tr. 248-249.

On November 2, 1999, Dr. Robert D. Kukla examined Plaintiff (Tr. 250-254) and found that Plaintiff had 5/5 bilateral grip strength and that Plaintiff's ability to use his hands for fine and gross manipulations was normal.  Plaintiff had normal sensation, no atrophy, and full strength in his lower extremities.  There was no swelling, crepitus, instability, or deformity of Plaintiff's left knee or left ankle.  X-rays of Plaintiff's left knee, left ankle, and left shoulder were normal.  Dr. Kukla found that Plaintiff had no evidence of impairment of his thoracic or lumbar spine or lumbosacral spinal nerves, left shoulder, left knee, or ankle.  Tr. 252.

The ALJ's decision is also supported by the opinion of the State agency physicians and psychologists who reviewed Plaintiff's medical records and completed residual functional capacity ("RFC") assessments.  20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency … [physicians ]… regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").  A December physical RFC assessment indicated no physical limitations.  Tr. 549-556.  In June 2000, a State agency medical consultant reviewed Plaintiff's record and determined that Plaintiff could lift and carry fifty pounds occasionally and ten pounds frequently; sit, stand, and walk about six hours in an eight-hour workday; occasionally stoop and climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; and frequently balance, kneel, crouch, and crawl.  Tr. 527-534.  In November 1999 and April 2000, State agency psychologists found Plaintiff's depression and affective disorders resulted in moderate restrictions

of activities of daily living; moderate difficulties in maintaining social functioning; and that he would often have deficiencies of concentration, persistence, or pace.  Tr. 535-542.

     B.    <u>New Evidence</u>

     On July 19 and September 2, 2005, Plaintiff filed copies of medical records dated September 10, 2004; December 13, 2004; and June 2, 2005.[5]  He appears to argue that these records show that the ALJ's decision should be reversed.  Plaintiff, in his brief, also appears to ask the Court to consider other medical records from time prior to the time Plaintiff was last insured.

     Plaintiff fails to show that any new or additional evidence should be considered by this Court.  "Reviewing courts are restricted to the administrative record in performing their limited function of determining whether the [Commissioner's] decision is supported by substantial evidence."  <u>Huckabee v. Richardson</u>, 468 F.2d 1380, 1381 (4th Cir. 1972); <u>see also</u> 42 U.S.C. § 405(g).  The evidence submitted by Plaintiff is not part of the administrative record.  Thus, the Commissioner's decision should not be reversed based on this evidence because it is not part of the administrative record.

     Additionally, Plaintiff fails to show that this action should be remanded to consider new evidence.  Additional evidence must meet four prerequisites before a reviewing court may remand the case to the Commissioner on the basis of newly discovered evidence.  These prerequisites are as follows:

     1.    The evidence must be **relevant** to the determination of disability at the time the application was first filed and not merely cumulative.

---

[5]On April 14, 2003, Plaintiff filed copies of a report he claims if from South Carolina Vocational Rehabilitation.  This appears to be another copy of a document that is already part of the record (Tr. 618-619), having been submitted to the Appeals Council after the ALJ's decision.

2.    The evidence must be **material** to the extent that the Commissioner's decision might reasonably have been different had the new evidence been presented.

3.    There must be **good cause** for the claimant's failure to submit the evidence.

4.    The claimant must present to the remanding court at least a **general showing** of the nature of the new evidence.

Borders v. Heckler, 777 F.2d 954 (4th Cir. 1985)(emphasis added).[6]  Plaintiff has not shown that the 2004 and 2005 records, for medical treatment that occurred more than four years after the expiration of his insured status (on March 31, 2000) are "relevant."  A claimant must establish that the evidence was "relevant to the determination of disability at the time the application was first filed and not merely cumulative."  Mitchell v. Schweiker, 699 F.2d 185, 188 (4th Cir. 1983).

These records are not relevant as they do not relate to the period on or before the ALJ's decision (although they may be useful for a new disability application).  See 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1).  He fails to show that there was any "good cause" for the failure to submit evidence of treatment rendered prior to the time he was last insured.

_____

[6]The court in Wilkins v. Secretary of Dep't of Health & Human Serv., 925 F.2d 769 (4th Cir.1991), rev'd on other grounds, 953 F.2d 93 (en banc), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  Id. at 774; see Wilkins, 953 F.2d at 96 n. 3.  The standard in 42 U.S.C. § 405(g) allows for remand where "there is new evidence which is material and … there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that the Borders construction of 42 U.S.C. § 405(g) is incorrect.  See Sullivan v. Finkelstein, 496 U.S. 617, 626 n. 6 (1990). Thus, the more stringent Borders test should be applied.  Even if the less stringent test is applied, Plaintiff fails to show that this case should be remanded because he fails to show that the new evidence is "material" or there is "good cause" for failure to incorporate it into the prior proceeding.

C.     Disability Rating

Plaintiff appears to argue that he should be found disabled based on disability ratings from two of his physicians and from the VA.  He argues that Dr. Joseph Hodge (a general, thoracic, and cardiovascular surgeon) gave him a fifteen percent impairment rating for chronic lumbosacral strain in December 1995 (Tr. 179); Dr. Mason rated Plaintiff with partial disability to his left upper extremity (six percent) and right upper extremity (two percent) (Tr. 194); the VA gave him a forty percent disability rating in February 1995; and on November 8, 2000, the VA granted Plaintiff entitlement to individual unemployability effective March 12, 1997 (Tr. 523).

The disability ratings of Drs. Hodge and Mason are not necessarily indicative of disability. See Loving v. Department of Health & Human Servs., 16 F.3d 967, 968 (8th Cir. 1994)(workers' compensation disability rating of five percent, claimant found not disabled); Stephens v. Heckler, 766 F.2d 284, 285 (7th Cir. 1985)(thirty percent workers' compensation disability rating, claimant found not disabled); and Waters v. Gardner, 452 F.2d 855, 858 (9th Cir. 1971)(majority of doctors rated the claimant's disability at less than thirty percent, claimant found not disabled).  Further, at the time Dr. Mason gave Plaintiff the impairment rating, he also stated that Plaintiff was discharged to full work activity.  Tr. 194.

The ALJ's decision to discount the VA rating decisions is also supported by substantial evidence.  Opinions of an outside agency regarding disability are not binding upon the Commissioner. 20 C.F.R. § 404.1504; Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir.1991); DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir.1983).  The ALJ concluded that the VA information was not persuasive because the VA disability criteria are not the same as those utilized by the Social Security Administration and because these ratings were not supported by the medical

13

evidence.  The Social Security Act provides that a claimant must prove the inability to perform any

substantial gainful activity due to medically determinable impairments.  <u>See</u> 42 U.S.C.

§ 423(d)(1)(A).[7]  The VA, however, does not require a veteran to prove inability to engage in any

substantial gainful activity to be found totally disabled under the VA regulations.  Those regulations

instead provide that "all veterans who are unable to secure and follow a substantially gainful

occupation by reason of service-connected disabilities shall be rated totally disabled."  38 C.F.R.

§ 4.16(b).

   D.  <u>Treating Physician</u>

    Plaintiff contends that the ALJ erred in discounting the opinions of one of his

treating physicians, Dr. Joseph Healy (a neurologist) and of his treating psychologist, Dr. Doyle.

The Commissioner contends that the ALJ's decision to discount these opinions of disability is

supported by substantial evidence.

    Dr. Healy treated Plaintiff for complaints of musculoskeletal pain from May 1994 to May

1997.  Tr. 221-241.  Dr. Healy provided multiple opinions that Plaintiff could not return to work

---

[7]Plaintiff also appears to allege that he should be found disabled based on a Vocational Rehabilitation report that stated that he was disabled.  As noted above, such an opinion is not binding on the Commissioner.  Further, there is no indication that the Appeals Council should have found Plaintiff disabled based on the report that is in the record (Tr. 618-619).  It is unclear what agency produced the form, it is impossible to discern whether the "counselor" who signed the report is an acceptable medical source, and the report does not have a legible date to show when it was produced (to determine whether it is relevant to the time Plaintiff was last insured).  Additionally, it is unclear what medical records were reviewed to make the determination of disability.  Further, although Plaintiff has submitted a clearer copy of the report to the Court, there is no indication of any good cause for not having submitted this report while the case was pending before the ALJ and/or the Appeals Council.

involving repetitive or heavy lifting.[8]  Tr. 221, 238, 243.  He also periodically opined that Plaintiff's restrictions rendered him disabled.  Tr. 228, 231-233.  Dr. Doyle frequently opined that Plaintiff was disabled.  Tr. 324, 326, 251, and 384.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986).  In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician.  See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983).  The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled.  DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2).  The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight."  Craig, 76 F.3d at 589.

---

[8]These opinions do not appear to conflict with the ALJ's determination that Plaintiff could perform a range of light work that did not require overhead reaching with either arm.

The ALJ's decision to discount these opinions of disability is supported by substantial evidence. Dr. Healy's opinions of disability are not supported by his own treatment notes which reveal that Plaintiff's physical examinations and diagnostic testing were essentially normal. See Tr. 224, 227, 246, 247. Dr. Healy's recommendation in August 1994 that Plaintiff obtain vocational retraining to a less strenuous occupation (Tr. 238) was inconsistent with his statements that Plaintiff was disabled. A treating physician's statement that a claimant is a candidate for vocational rehabilitation supports an inference that the claimant's impairment is not disabling. See Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991)(a treating physician's statement that a claimant is a candidate for vocational rehabilitation supports an inference that the claimant's impairment is not disabling). Dr. Healy's opinions of disability were inconsistent with other physicians' findings and appeared to be based on Plaintiff's subjective complaints.

Dr. Doyle's notes do not reflect that he performed a mental status examination of Plaintiff, but that he merely repeated Plaintiff's subjective complaints and opined that these symptoms disabled Plaintiff. During Plaintiff's hospitalization in 1996, testing showed that Plaintiff exaggerated his symptoms. Tr. 218. Plaintiff's psychiatric symptoms were alleviated with therapy and medication, and Plaintiff was discharged from the hospital in good condition. Tr. 219. Dr. Doyle's conclusions were also not supported by his failure to provide any more intensive or effective treatment for Plaintiff's complaints. See, e.g., Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992)(conservative treatment was not consistent with an allegation of disability). Dr. Doyle's conclusions are also contradicted by the findings of Dr. Harley, as discussed above. Additionally, as noted by the ALJ, the opinions of Dr. Doyle are often contradicted by the findings of the VA Mental Health Clinic nurses.

16

E.     Credibility/Side Effects of Medications

Plaintiff alleges that the ALJ failed to properly evaluate his credibility and to properly consider the side effects of his medication. The Commissioner argues that the ALJ properly considered all of the evidence, both medical and non-medical, in assessing Plaintiff's credibility.

In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered the medical and non-medical evidence in making his credibility determination. As discussed above, the ALJ's decision is supported by the medical record. The ALJ's decision is also supported by inconsistencies in the record. Plaintiff presented to Dr. Harley and Dr. Kukla with crutches, yet examinations revealed no evidence of muscle atrophy. Dr. Harley did not believe that Plaintiff used the crutches very often because Plaintiff

17

employed an ineffective technique when he employed the crutches. Tr. 248. Additionally, examination of Plaintiff's lower extremities failed to show evidence of an impairment that would require crutches. See Tr. 252. Testing revealed that Plaintiff exaggerated his symptoms during his hospitalization (Tr. 218) and Dr. Harley sensed that Plaintiff was merely repeating answers he heard from others in describing his PTSD (Tr. 249). See, e.g., Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996)(ALJ may consider claimant's lack of motivation); Jenkins v. Bowen, 861 F.2d 1083, 1086 (8th Cir. 1988)(ALJ may consider claimant's exaggeration of symptoms). Contrary to Plaintiff's argument, the ALJ also considered the side effects of Plaintiff's medications, noting that at the hearing, Plaintiff

> reported that some of his medications caused sleepiness and dizziness. A careful review of the medical records showed a few complaints of adverse side effects of his medications, but on those occasions, the medication was discontinued, the dosage adjusted, or other measures were taken to relieve the side effects.

Tr. 26.

    F.    Hypothetical to the VE

        Plaintiff appears to allege that the VE was not qualified and she committed error by failing to review his records.[9] He also appears to allege the ALJ erred in failing to accept the VE's testimony in response to Plaintiff's representative's hypothetical (the VE testified that if Plaintiff had side effects from medication that made him dizzy for three hours at a time, three times during the day, he would not be able to perform the jobs identified - Tr. 61-62). The Commissioner

_____

[9]Review of the record, however, reveals that the VE at the April 7, 2003 hearing stated that she had reviewed Plaintiff's file as to his vocational profile and had listened to Plaintiff's testimony. Tr. 57. The VE's curriculum vitae was present in Plaintiff's file and Plaintiff's representative stipulated that Plaintiff was a VE. Tr. 56-57.

argues that the ALJ's hypothetical did not need to include every limitation testified to by Plaintiff, but only those bourne out by the evidentiary record and accepted by the VE.

In order for a VE's opinion to be relevant or helpful, it must be based upon a consideration of all the other evidence on the record and must be in response to hypothetical questions which fairly set out all of the plaintiff's impairments. Walker v. Bowen, 889 F.2d  47, 50 (4th Cir. 1989).  The questions, however, need only reflect those impairments that are supported by the record. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987).

The hypothetical by the ALJ fairly set out Plaintiff's credible limitations.  The ALJ asked the VE to consider an individual of the Plaintiff's age, educational background, and past work experience who:

> is limited to performing work with the restrictions that require simple, routine work.  A low stress, supervised environment and by that I mean a non-competitive environment with few decisions and a supervisor in the area to answer questions.  No interaction with the public or team-type interaction with coworkers.  No lifting or carrying over 20 pounds occasionally and 10 pounds frequently.  No pushing or pulling over 20 pounds.  No standing and/or walking over six hours in an eight-hour day.  A sit/stand option. Limited stooping, twisting, crouching and kneeling.  No crawling, climbing or balancing.  No reaching overhead with either arm.  No foot pedals or other controls with either lower extremity.  And an environment free from poor ventilation, dust, fumes, gases, odors and extremes of humidity and temperature.

Tr. 58.  In response, the VE identified the light, unskilled jobs of packager, router, and sorter. The ALJ did not err in not including other limitations in his hypothetical or accepting the testimony in response to questions by Plaintiff's representative because those restrictions were not supported by the record.  See Lee v. Sullivan, 945 F.2d 689, 698-94 (4th Cir. 1991)(noting that a requirement introduced by claimant's counsel in a question to the VE "was not sustained by the

evidence, and the vocational expert's testimony in response to the question was without support in the record."); <u>Chrupcala</u>, <u>supra</u>.

CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered <u>de novo</u>, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u>. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

January 19, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

## Notice of Right to File Objections to Magistrate Judge's Report and Recommendation
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be delivered to a United States District Judge fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. Any written objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), cert. denied, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), cert. denied, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are not sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

Accord Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded pro se in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a pro se litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger de novo review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra,; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**901 Richland Street**
**Columbia, South Carolina 29201**